EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Empresas Ferrer Inc., Por conducto del Arq. Enrique Gutiérrez Recurrida <br><br> v. <br><br> Administración de Reglamentos Y Permisos (A.R.P.E) Recurrida <br><br> Asociación de Condóminos del Condominio Grand Royal, et al. Interventores-Peticionarios | Certiorari <br><br> 2007 TSPR 175 <br><br> 172 DPR _____ |

Número del Caso: CC-2005-156


Fecha: 2 de octubre de 2007

Tribunal de Apelaciones:

      Región Judicial de San Juan, Panel IV

Juez Ponente:

      Hon. Carlos Rodríguez Muñiz

Abogados de la Parte Peticionaria:

      Lcdo. Daniel Martínez Oquendo
      Lcdo. Juan J. Casillas Ayala

Abogado de la Parte Recurrida:

      Lcdo. José A. Andréu García
      Lcdo. Eduardo Ferrer Ramírez
      Lcdo. Edwin Santos Baerga

Oficina del Procurador General:

      Lcda. Mariana D. Negrón Vargas
      Subprocuradora General

      Lcda. Amir Cristina Nieves Villegas
      Procuradora General Auxiliar

Materia:   Revisión Administrativa procedente de la Administración de Reglamentos y Permisos


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Empresas Ferrer Inc.,
por conducto del
Arq. Enrique Gutiérrez
    Recurrida

        v.

Administración de Reglamentos
y Permisos (A.R.P.E.)                CC-2005-156
    Recurrida

        v.

Asociación de Condóminos del
Condominio Grand Royal, *et al*.
Interventores-Peticionarios

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 2 de octubre de 2007

Corresponde determinar en esta ocasión, si la Administración de Reglamentos y Permisos (A.R.P.E.) concedió correctamente unas variaciones a los parámetros de construcción del Reglamento de Zonificación Especial del Condado.

## I.

Empresas Ferrer, Inc., (Empresas Ferrer), presentó ante la Administración de Reglamentos y Permisos (A.R.P.E.) un anteproyecto de construcción conforme el Reglamento de Zonificación Especial del Condado (Reglamento del Condado), Reglamento Núm. 3319 de 12 de junio de 1986, 23 R.P.R. sec. 650.1791

*et seq.* Esta compañía propuso la construcción de un complejo de vivienda en **dos solares** colindantes entre sí que opcionó mediante un contrato de opción de compraventa.[1] Ambos solares tienen una configuración física regular pero una vez agrupados, su configuración, como un nuevo solar, sería irregular. Empresas Ferrer solicitó además, variaciones a las disposiciones del Reglamento del Condado ya que el desarrollo propuesto incumplía ciertos parámetros de construcción establecidos por el mismo.[2]

Empresas Ferrer propuso la construcción de un edificio residencial multifamiliar de catorce (14) plantas con veintiocho (28) apartamentos de dos (2) habitaciones cada uno, distribuidos en dos (2) apartamentos por piso. Éste ocupará los dos (2) solares que opcionó, que colindan por sus respectivos patios posteriores y están localizados entre las

---

[1] Conforme este contrato, los dueños de las propiedades se comprometieron a permitirle la presentación del anteproyecto a Empresas Ferrer. Éstos autorizaron la referida presentación mediante carta fechada del 29 de noviembre de 2001. Apéndice al recurso de *certiorari*, págs. 91 y 93.

[2] En el Memorial Explicativo que presentó Empresas Ferrer como parte de su solicitud de anteproyecto, solicitó la concesión variaciones argumentando que las mismas "están directamente relacionadas con la **configuración inadecuada** de la propiedad." Apéndice al recurso de *certiorari*, pág. 66. (Énfasis suplido) Además, en el Memorando de Derecho que presentó ante A.R.P.E. durante la consideración de su anteproyecto expresó que las variaciones solicitadas **"responden a la forma irregular del solar."** Memorando de Derecho de Empresas Ferrer, *Id.*, pág. 202. (Énfasis suplido). Más aún, en respuesta a la comparecencia de la perito de los peticionarios, Empresas Ferrer presentó un documento donde expresó que el solar "existe como tal desde hace muchos años con su forma irregular." *Id.*, pág. 214.

calles Luchetti y Wilson del Condado.[3] Los solares ubican

dentro de los límites de una Zonificación Residencial (R)[4] de

acuerdo con el Mapa y el Reglamento de Zonificación del

Condado y tiene una cabida combinada de 2,050.00 metros

cuadrados, equivalentes a 0.5216 cuerdas. De acuerdo al

expediente del presente recurso, "al momento de ventilarse

este caso ante la A.R.P.E. aún los predios no habían sido

adquiridos" por Empresas Ferrer,[5] ni tampoco habían sido

agrupados.[6]

Así las cosas, A.R.P.E. celebró una vista pública para

considerar el anteproyecto y las variaciones al Reglamento de

Zonificación Especial solicitadas por Empresas Ferrer, donde

las partes interesadas tuvieron oportunidad de presentar

argumentos a favor y en contra del desarrollo.

Posteriormente, la Oficial Examinadora que presidió la

referida vista, rindió un informe recomendando favorablemente

la aprobación del anteproyecto y las variaciones solicitadas.

Concluyó, entre otras cosas, que "[l]as variaciones

solicitadas por el proponente **responden mayormente a la forma**

**irregular del solar**, el cual no tiene una proporción adecuada

---

[3] De acuerdo a la Resolución de A.R.P.E., el complejo de vivienda tendría acceso hacia las calles Luchetti y Wilson del Condado. Apéndice al recurso de *certiorari*, pág. 54.

[4] El Reglamento de Zonificación Especial del Condado, dispone que una Zona Residencial (R) "se establece para clasificar áreas dedicadas exclusivamente al uso residencial." 23 R.P.R. sec. 650.1802(C).

[5] Alegato de Empresas Ferrer presentado ante el Tribunal de Apelaciones, pág. 13, Apéndice al recurso de *certiorari*, pág. 595.

[6] *Id.*, pág. 585.

de ancho vs. fondo."[7] El informe fue acogido en su totalidad por el Gerente del Centro de Servicios de A.R.P.E. y posteriormente la agencia emitió una Resolución autorizando el anteproyecto y las variaciones solicitadas.[8]

Inconformes, la Asociación de Condóminos del Condominio Crowne Plaza (Asociación de Condóminos), el licenciado Salvador Antonetti Zequeira (licenciado Antonetti Zequeira), la Asociación de Condóminos del Condominio Grand Royal y el licenciado Arnaldo Villamil, solicitaron revisión ante el Tribunal de Apelaciones.[9] Dicho foro, confirmó la Resolución emitida por A.R.P.E. que autorizó el anteproyecto y las variaciones en controversia. Razonó que la determinación de esta agencia era razonable ya que demostró que examinó y consideró la reglamentación aplicable y las objeciones de los opositores. Además, entendió que la determinación administrativa corresponde a las circunstancias que contempla el Reglamento del Condado para la concesión de variaciones,

---

[7] Informe de vista administrativa, Relación del caso, presentada por la Oficial Examinador, Apéndice al recurso de *certiorari*, pág. 604. (Énfasis suplido)

[8] En su Resolución, A.R.P.E. consignó como una conclusión de derecho que

> [l]as variaciones solicitadas por el proponente **responden mayormente a la forma irregular del solar**, el cual no tiene una proporción adecuada de ancho vs. Fondo. La aplicación literal del reglamento crearía una restricción irrazonable al desarrollo de este proyecto que tratando de cumplir por la densidad máxima permitida necesariamente conlleva las variaciones solicitadas.

Resolución de A.R.P.E., conclusión de derecho Núm. 10, Apéndice al recurso de *certiorari*, pág. 56. (Énfasis suplido)

[9] A estas partes se les permitió participar en el procedimiento ante A.R.P.E. como interventores.

entiéndase "la forma irregular del solar, el no verse afectadas propiedades vecinas y la armonía con los objetivos y propósitos del referido reglamento."

En cuanto al planteamiento de que A.R.P.E. basó su determinación en un solar inexistente, que aún no había sido agrupado, el foro apelativo intermedio concluyó que el Reglamento de Zonificación Especial no limita la facultad de la agencia de aprobar un anteproyecto de un solar no agrupado. Coligió que un anteproyecto es una consulta que "permite la presentación de situaciones hipotéticas y de esquemas de construcción en solares no existentes que le brinda al ciudadano la certeza de que, luego de cumplir con las condiciones impuestas por la referida agencia, obtendrá el permiso de construcción." Añadió que en el presente caso se le permitió a Empresas Ferrer conocer que una vez agrupara los solares obtendría el permiso de A.R.P.E. para la construcción de su edificio.

Todavía en desacuerdo, la Asociación de Condóminos y el licenciado Antonetti Zequeira comparecen ante este Tribunal solicitándonos la revisión de la determinación del tribunal apelativo.[10]

---

[10] Los peticionarios aducen que dicho foro incurrió en los siguientes errores:

> Primer Error: ERRÓ EL TRIBUNAL DE APELACIONES AL VALIDAR LA DETERMINACIÓN DE LA ARPE AUTORIZANDO MÚLTIPLES VARIACIONES AL ANTEPROYECTO A BASE DE QUE EL SOLAR ERA "IRREGULAR", DIVORCIÁNDOSE DE LA REALIDAD DE QUE EMPRESAS FERRER PRETENDIÓ AGRUPAR DOS SOLARES PERFECTAMENTE REGULARES, POR LO QUE ÉSTA SE AUTOINFLIGIÓ UN DAÑO.

Expedimos el auto. Contando con la comparecencia de las partes y estando en posición de resolver el recurso ante nuestra consideración, procedemos a así hacerlo.

**II.**

En su recurso, la Asociación de Condóminos y el licenciado Antonetti Zequeira argumentan que A.R.P.E. aprobó y concedió las variaciones solicitadas por Empresas Ferrer incorrectamente. Alegan que Empresas Ferrer provocó la condición utilizada para justificar su solicitud de variaciones, auto-infligiéndose así el daño que ahora le impide desarrollar su proyecto como pretende. Además, sostienen que A.R.P.E. concedió las variaciones en contravención del Reglamento del Condado, sin justificar las mismas conforme los criterios establecidos para su concesión y emitiendo una resolución carente de análisis de los

---

Segundo Error: ERRÓ EL HONORABLE TRIBUNAL DE APELACIONES AL VALIDAR LA DETERMINACIÓN DE LA ARPE AL AUTORIZAR UN PROYECTO RESIDENCIAL MULTIFAMILIAR QUE CONLLEVA VARIACIONES, QUE NO FUERON JUSTIFICADAS, NI CUMPLEN CON LOS CRITERIOS DISPUESTOS EN LA SECCIÓN 6.04 DEL REGLAMENTO DE ZONIFICACIÓN ESPECIAL DEL CONDADO.

Tercer Error: ERRÓ EL HONORABLE TRIBUNAL DE APELACIONES AL CONFIRMAR LA DETERMINACIÓN DE LA ARPE, LA CUAL AUTORIZÓ UN PROYECTO QUE CONLLEVA VARIACIONES BASÁNDOSE EN LAS CARACTERÍSTICAS DE EDIFICIOS CERCANOS, CONSTRUIDOS BAJO UNA REGLAMENTACIÓN ANTERIOR, VIOLANDO LA POLÍTICA PÚBLICA PLASMADA EN LAS DISPOSICIONES DEL REGLAMENTO DE ZONIFICACIÓN DEL CONDADO, VIGENTE.

Cuarto Error: ERRÓ EL TRIBUNAL DE APELACIONES AL VALIDAR LA DETERMINACIÓN DE LA ARPE NO EMPECE A QUE DICHA RESOLUCIÓN CARECE DE UN ANÁLISIS E IGNORA LOS CONFLICTOS DE PRUEBA EN EL CASO; NO DESCRIBE LOS HECHOS QUE FUERON RECHAZADOS Y LAS RAZONES QUE TUVO LA AGENCIA PARA ELLO.

conflictos de prueba que tuvo ante su consideración y sin describir los hechos que rechazó y las razones para ello.

Por su parte, Empresas Ferrer sostiene que la determinación de A.R.P.E. merece gran deferencia y respeto ya que la misma está sustentada por evidencia sustancial que obra en el expediente administrativo. Sostiene además, que la Asociación de Condóminos y el licenciado Antonetti Zequeira no han podido derrotar la presunción de legalidad y corrección que cobija a la determinación de A.R.P.E. mediante la presentación de evidencia. Veamos.

**A.**

Antes de entrar a considerar los méritos del presente recurso, es pertinente precisar el alcance y los límites de la revisión judicial de las determinaciones o actuaciones que realizan las agencias administrativas. En esta tarea, debemos tener presente que "los tribunales tenemos el deber de fiscalizar rigurosamente las decisiones de dichas agencias, para asegurar que desempeñen cabalmente sus importantísimas funciones, y para que el País no pierda la fe en sus instituciones de gobierno." *Mun. de San Juan v. J.C.A.*, 152 D.P.R. 673, 700 (2000).

La revisión judicial de decisiones administrativas tiene como fin primordial delimitar la discreción de los organismos administrativos para asegurar que éstos ejerzan sus funciones conforme la ley y de forma razonable. *Mun. de San Juan v. J.C.A.*, 149 D.P.R. 263, 279 (1999). Por lo general, éstas gozan de gran deferencia y respeto de parte de nuestros

tribunales. *Mun. de San Juan v. J.P.*, 169 D.P.R. ___, 2006 T.S.P.R. 155; *Hernández v. Centro Unido*, 168 D.P.R. ___, 2006 T.S.P.R. 131. Lo anterior se fundamenta en la vasta experiencia y el conocimiento especializado que poseen los organismos administrativos sobre los asuntos que estatutariamente se les ha encomendado. *Id*.

Ahora bien, la deferencia reconocida cede ante instancias apropiadas y meritorias, como resulta ser cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) cuando actúa arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional; ó (4) si la actuación administrativa lesiona derechos constitucionales fundamentales. *Sonia M. Vázquez Cintrón v. Banco de Desarrollo Económico para Puerto Rico*, 171 D.P.R. ___, 2007 T.S.P.R. 86; *Hernández v. Centro Unido*, *supra*.; *Mun. de San Juan v. J.P.*, *supra*. En esencia, los tribunales no pueden imprimirle un sello de corrección, so pretexto de deferencia, a determinaciones o interpretaciones administrativas irrazonables o ilegales o simplemente contrarias a derecho. *Sonia M. Vázquez Cintrón v. Banco de Desarrollo Económico*, *supra*.

En el ejercicio de nuestra función revisora, es importante considerar las determinaciones de hechos y conclusiones de derecho consignadas en una determinación

administrativa. *Mun. de San Juan v. J.P.*, supra; *Rebollo Vda. de Liceaga v. Yiyi Motors*, 160 D.P.R. ___, 2004 T.S.P.R. 2. Lo anterior permite cotejar si el organismo administrativo cumplió cabalmente su responsabilidad legal y si además fundamentó la determinación objeto de revisión. *Hernández v. Centro Unido*, *supra*. Estas determinaciones deben reflejar que se consideraron y resolvieron los conflictos de prueba y además, deben describir tanto los hechos probados como los rechazados. *Mun. de San Juan v. J.C.A.*, *supra*, 280. Más aún, "la expresión de los fundamentos de una decisión no puede ser pro forma, y debe reflejar que la agencia ha cumplido con su obligación de evaluar y resolver los conflictos de prueba del caso ante su consideración." *Id*.

Consignar adecuadamente determinaciones de hecho y conclusiones de derecho permite que: (1) los tribunales tengan la oportunidad de revisar adecuadamente la determinación administrativa ante su consideración; (2) fomenta que los organismos administrativos adopten decisiones cuidadosas y razonadas conforme el ámbito de su autoridad y discreción; (3) ayudan a la parte afectada a entender la razón de la determinación administrativa, permitiendo así que ésta decida si solicita o no su revisión ante el foro apelativo correspondiente o si de lo contrario, acata la misma; (4) promueve la uniformidad intraagencial, en particular cuando el proceso decisorio institucional es adoptado por distintos miembros de un comité especial a quienes les está encomendado celebrar vistas y recibir la

prueba; y, (5) evita que los tribunales usurpen funciones propias de las agencias administrativas dado su conocimiento o *expertise*. *Mun. de San Juan v. J.P.*, *supra*; *Reyes Salcedo v. Policía*, 143 D.P.R. 85 (1997); *Mun. de San Juan v. J.C.A.*, *supra*, 281-282.

La sección 4.5 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A sec. 2175, estipula que las determinaciones de hechos de las agencias administrativas serán sostenidas si están fundamentadas por evidencia sustancial que obre en el expediente administrativo considerado en su totalidad. *Hernández v. Centro Unido*, *supra*. Evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión." *Hernández v. Centro Unido*, *supra*; *Otero v. Toyota*, 163 D.P.R. ___, 2005 T.S.P.R. 8. La aplicación de este principio evita que se sustituya el criterio del organismo administrativo en materia especializada por aquél del tribunal revisor. *Id.*

En cuanto a las conclusiones de derecho, la L.P.A.U. dispone que éstas pueden ser revisadas "en todos sus aspectos por el tribunal." 3 L.P.R.A sec. 2175. No obstante, los tribunales deben concederle gran peso y deferencia a las interpretaciones que los organismos administrativos realizan de las leyes y reglamentos que administran, por lo que no pueden descartar libremente las conclusiones e interpretación de la agencia, sustituyendo el criterio de éstas por el propio. *Hernández v. Centro Unido*, *supra*; *P.C.M.E. v. J.C.A.*,

166 D.P.R. ___, 2005 T.S.P.R. 202. Así, si la interpretación de la ley o reglamento que realiza determinada agencia administrativa es razonable, aunque no sea la única razonable, los tribunales debemos concederle deferencia. *Hernández v. Centro Unido*, *supra*. Más aún, los tribunales podrán sustituir el criterio de la agencia por el suyo únicamente cuando no encuentren una base racional para explicar la determinación administrativa. *Hernández v. Centro Unido*, *supra*; *Otero v. Toyota*, *supra*.

**B.**

En reiteradas ocasiones hemos expresado que las variaciones son una válvula de escape dentro del rígido ordenamiento de zonificación vigente en nuestra jurisdicción. *Asoc. Res. Park Side, Inc. v. J.P.*, 139 D.P.R. 349 (1995). Éstas atenúan el rigor reglamentario permitiendo aliviar restricciones que regulan el disfrute de determinada propiedad cuando se demuestra que, dado circunstancias especiales, la aplicación de la reglamentación vigente es irrazonable y ocasiona perjuicios a su propietario. *Id*; *A.R.P.E. v. J.A.C.L.*, 124 D.P.R. 858 (1989). Así, se evita que una reglamentación existente se convierta en un instrumento inflexible e incapaz de amoldarse a situaciones extraordinarias. *T-JAC, Inc. v. Caguas Centrum Limited*, 148 D.P.R. 70 (1999).

Ahora bien, las variaciones, dado su carácter excepcional, no se favorecen y sólo deben concederse en situaciones realmente extraordinarias, cuando están

claramente justificadas y procedan conforme las leyes y reglamentos aplicables. *Mun. de San Juan v. Bosque Real, S.E.*, 158 D.P.R. 743 (2003); *T-JAC, Inc. v. Caguas Centrum Limited* , *supra*; *Asoc. Res. Park Side, Inc. v. J.P.*, *supra*, 357; *A.R.P.E. v. J.A.C.L.*, *supra*, 862. Ello así ya que el uso inapropiado e indiscriminado de este mecanismo "podría destruir todo nuestro esquema de zonificación y cambiar eventualmente las características de un distrito planificado originalmente con una infraestructura para ciertos usos." *A.R.P.E. v. J.A.C.L.*, *supra*, 862. Por lo anterior, "una decisión administrativa concediendo o denegando excepciones o variaciones acorde a los Reglamentos de Zonificación **debe estar debidamente fundamentada**," demostrando así la agencia que analizó los criterios estatutarios y reglamentarios aplicables a la consideración de este tipo de solicitud. *Vélez Rodríguez v. A.R.P.E.*, 167 D.P.R. ___, 2006 T.S.P.R. 69 (énfasis suplido); *López v. Junta Planificación*, 80 D.P.R. 646, 664 (1958).

Conforme la facultad delegada estatutariamente para implantar la política pública que le ha sido encomendada, A.R.P.E. puede conceder permisos discrecionales mediante la concesión de excepciones o variaciones a los requisitos de los reglamentos de zonificación que administra. *Asoc. Vec. Urb. Huyke v. Bco. Santander*, 157 D.P.R. 521 (2002). Uno de estos reglamentos es el de Zonificación Especial del Condado, aprobado por la Junta de Planificación para "establecer las normas y criterios que regirán el uso y desarrollo de[l

Condado], para asegurar y fomentar la salud, seguridad, orden, prosperidad y bienestar general de todos los residentes, turistas, comerciantes y usuarios del Sector." 23 R.P.R. sec. 650.1792. De acuerdo a su texto, sus disposiciones prevalecen sobre las de reglamentos generales pero quedarán complementadas por aquellas de otros reglamentos adoptados por la Junta, que apliquen al área donde ubique la propiedad y hasta donde no sean incompatibles con el asunto específicamente regulado por el Reglamento del Condado.[11] 23 R.P.R. sec. 650.1795.

El Reglamento del Condado regula específicamente la concesión de variaciones a sus requisitos. Éste permite que tanto la Junta de Planificación como A.R.P.E. concedan variaciones en instancias "donde, debido a circunstancias excepcionales o extraordinarias, una aplicación literal de[l mismo] resultase en la prohibición o restricción irrazonable del disfrute de una pertenencia o propiedad." 23 R.P.R. sec. 650.1851; *Mun. de San Juan v. J.C.A.*, *supra*, 695. Estipula además que a las agencias se le tiene que demostrar "a su satisfacción[,] que la variación (conseción) aliviará un perjuicio claramente demostrable, o que la misma habrá de redundar en los mejores intereses de la comunidad y el

---

[11] "El Reglamento del Condado . . . tiene primacía sobre el Reglamento [de Planificación] Núm. 4 no solo por ser un reglamento especial sino también porque sus disposiciones fueron establecidas con el propósito de atender los problemas específicos que son particulares al área del Condado. Por ende, para conceder variaciones en un proyecto en el área del Condado hay que atenerse en primer lugar a las disposiciones que [el Reglamento del Condado] establece sobre las dispuestas en el Reglamento Núm. 4, que es un reglamento general." *Mun. de San Juan v. J.C.A.*, *supra*, 697.

sector." *Id*. De acuerdo al Reglamento, las variaciones deben ser solicitadas por el dueño de la propiedad para la que se solicita o por su representante autorizado y A.R.P.E. o la Junta de Planificación no "considerará o hará variación (concesión) alguna en exceso de la solicitada." 23 R.P.R. sec. 650.1852.

La sección 6.04 del Reglamento del Condado, 23 R.P.R. sec. 650.1854, **establece diez criterios que tienen que satisfacerse** antes que la Junta de Planificación o A.R.P.E. puedan conceder o denegar una solicitud de variación. *Mun. de San Juan v. J.C.A.*, *supra*, 695 nota 2. Dicha disposición específicamente estipula lo siguiente:

> No podrá autorizarse una variación (concesión), en todo o en parte, a menos que existan datos suficientes para establecer:
> (A) Que circunstancias excepcionales o extraordinarias, tales como la forma irregular del solar u otras circunstancias impiden el disfrute o la utilización de la propiedad.
> (B) Que debido a circunstancias excepcionales o extraordinarias la aplicación literal de ciertos requisitos específicos de este Capítulo resultaría en una dificultad práctica o en un perjuicio innecesario no creado o atribuible al dueño de la propiedad.
> (C) Que la variación (concesión) es necesaria para la preservación y el disfrute de un derecho de propiedad y se demuestre que la variación (concesión) aliviará un perjuicio claramente demostrable, cuyo derecho es poseído y disfrutado por otras pertenencias en el mismo distrito, el cual no afecta el bienestar público.
> (D) Que si en la variación (concesión) se solicitara la autorización de un uso no permitido en el distrito de zonificación, el uso solicitado sea compatible con el carácter esencial del distrito.
> (E) Que la variación (concesión) ha de redundar en los mejores intereses de la comunidad, municipio, o del pueblo de Puerto Rico.
> (F) Que la autorización de tal variación (concesión) no afectará adversamente el disfrute y

valor de las pertenencias cercanas en su uso presente y para cualquier otro futuro permitido.

(G) Que la autorización de tal variación (concesión) no encarecerá ni afectará adversamente la idoneidad, la seguridad y el funcionamiento conveniente de las facilidades públicas existentes o planeadas, incluyendo vías, escuelas, disposición de desperdicios y otros servicios esenciales.

(H) Que la variación (concesión) solicitada está en armonía con los propósitos generales de este Capítulo y con cualquier plan de uso de terrenos adoptado para el área.

(I) Que la autorización de tal variación (concesión) es consistente con el documento de Objetivos y Políticas Públicas del Plan de [Uso de] Terrenos, el Plan de Desarrollo Integral de Puerto Rico, el Programa de Inversiones de Cuatro Años y con la conservación y preservación de recursos naturales e históricos.

(J) Que el peticionario, a su vez, está en disposición de aceptar las condiciones y requerimientos adicionales a los requisitos reglamentarios que la Junta o la Administración le imponga para beneficio o protección del interés público.

*Id*.

Al momento de considerar una solicitud de variación conforme el Reglamento del Condado, tanto la Junta de Planificación como A.R.P.E. podrán celebrar discrecionalmente vistas públicas donde se le permita a las partes interesadas la oportunidad de presentar su posición en cuanto a la concesión de la misma. 23 R.P.R. sec. 650.1853. Lo anterior permitirá que la Junta de Planificación o A.R.P.E. tengan la oportunidad de "hacer las determinaciones de hechos y conclusiones de derecho descansando en la prueba aportada en la vista que justifique su determinación." *Id*.

### C.

Este Tribunal no ha vacilado en invalidar la concesión de variaciones a los requisitos de reglamentos de

zonificación justificadas por condiciones **creadas por el propio proponente de la misma** y que impiden el uso pretendido de la propiedad para la que se solicita.  Esto se fundamenta en la doctrina de la autoinflicción del daño, adoptada en nuestra jurisdicción en *Asoc. C.D. Octubre v. J.A.C.L.*, 116 D.P.R. 326, 334 (1985).  Como regla general, esta norma "impide la solicitud y concesión de una variación en casos en que el promovente -conociendo las limitaciones impuestas por los requisitos de zonificación- se coloca voluntariamente en una posición que le ocasiona perjuicio irrazonable." *Asoc. Res. Baldrich, Inc. v. J.P. de P.R.*, 118 D.P.R. 759, 772 (1987); *Véase además Asoc. Vec. Urb. Huyke v. Bco. Santander*, *supra*, 555-556; *Fuertes y Otros v. A.R.P.E.*, 134 D.P.R. 947, 959 (1993); *A.R.P.E. v. J.A.C.L.*, *supra*, 865.  Cabe señalar, que esta norma fue incorporada al texto del Reglamento del Condado aplicable al presente recurso.[12]

La doctrina de la autoinflicción del daño aplica a cualquier promovente de una variación independientemente de si su conocimiento de la restricción sobre la propiedad es real o constrictivo.  *Asoc. Vec. Urb. Huyke v. Bco. Santander*, *supra*; *Fuertes, Guillermety v. A.R.P.E.*, 130

---

[12] El Reglamento del Condado establece en su sección 6.04 que no se podrán conceder variaciones a menos que existan datos suficientes para establecer

. . . .

   (B)Que debido a circunstancias excepcionales o extraordinarias la aplicación literal de ciertos requisitos específicos de este Capítulo resultaría en una dificultad práctica o en un perjuicio innecesario **no creado o atribuible al dueño de la propiedad.**

23 R.P.R. sec. 650.1854(B) (Énfasis suplido).

D.P.R. 971 (1992); *A.R.P.E. v. J.A.C.L.*, *supra*. Así, hemos expresado que al adquirir la propiedad, se presume que su nuevo dueño la obtuvo con conocimiento de las limitaciones a las que estaba sujeta, por lo que no puede entonces premiársele permitiéndole que la utilice para un fin contrario éstas. *Asoc. Vec. Urb. Huyke v. Bco. Santander*, *supra*. De hecho, hemos expresado que el conocimiento previo de estas restricciones debilita sus posibilidades de éxito en los tribunales. *A.R.P.E. v. J.A.C.L.*, *supra*.

Ahora bien, en nuestra jurisdicción no hemos considerado la aplicación de la doctrina de la autoinflicción del daño a situaciones donde un adquiriente de varios solares los agrupa para que éstos formen un nuevo solar con dimensiones irregulares, permitiéndole así justificar una solicitud de variación. Ante este tipo de situaciones, la jurisprudencia norteamericana y los comentaristas han determinado que se autoinflinge un daño que no puede dar base a la concesión de una variación, aquél que con el propósito de justificarla deliberadamente configura su propiedad para que tenga forma irregular. Williams and Taylor, *American Land Planning Law*, vol. 7, cap. 151, sec. 151:3, pág. 179, Thomson West, (Ed. Rev. 2003);[13] *véase además Appeal of Lally*, 404 Pa. 174 (1961); *Corsino v. Grover*, 148 Conn. 299 (1961); *In the matter of Germaine M. Thomas, et al. v. Board of Standards and Appeals of the City of New York, et al.*, 290 N.Y. 109, 48

---

[13] "Of course, if an odd-shaped lot is deliberately created in order to have a situation where a variance would be appropriate, this ranks as self-created hardship and does not provide basis for a variance."

N.E.2d 284 (1943). En este tipo de situaciones se entiende que un desarrollador intencionalmente crea un solar de dimensiones que le permiten argumentar que sufre un daño si se le aplica literalmente la reglamentación de zonificación vigente, para tratar de lograr la obtención de ganancias por el desarrollo de su propiedad si se le concede la variación. Williams and Taylor, *supra*, pág. 227.[14] Ese daño que sufre el desarrollador no puede ser un factor a considerarse al momento de determinar si se concede o no la variación solicitada. Cabe señalar, que toda alegación de esta modalidad de daño auto-infligido debe estar fundamentada por evidencia que demuestre que la forma de una propiedad, utilizada para justificar una variación, **fue deliberadamente creada por el promovente de la misma.** *Ferris v. City of Austin*, 150 S.W.3d 514 (2004).

En vista de lo discutido anteriormente y de la particular situación que consideramos en esta ocasión, entendemos prudente adoptar en nuestra jurisdicción la modalidad de daño auto-infligido que hemos discutido. Así, resolvemos que el que deliberadamente configura su propiedad para que tenga una dimensión que le permita justificar una solicitud de variación, se auto-inflige un daño que no puede ser considerado al momento de evaluar dicha solicitud.

---

[14] "[S]ituation arises when, without any violation of law, a developer consciously creates a difficult situation which may serve as a basis for a finding of hardship and so for a variance, creating an opportunity for a great return from the land." *Id*.

**III.**

Habiendo expuesto y discutido la normativa aplicable al caso de autos, pasamos a resolver la controversia ante nuestra consideración.

Como adelantáramos, la Asociación de Condóminos y el licenciado Antonetti Zequeira argumentan que A.R.P.E. aprobó y concedió las variaciones solicitadas por Empresas Ferrer incorrectamente. En primer lugar, sostienen que Empresas Ferrer provocó la condición utilizada para justificar su solicitud de variaciones, autoinfligiéndose así el daño que ahora le impide desarrollar su proyecto como pretende. Además, aducen que A.R.P.E. concedió las variaciones en contravención del Reglamento del Condado, sin justificar las mismas a la luz de los criterios establecidos para su concesión y emitiendo una resolución carente de análisis de los conflictos de prueba que tuvo ante su consideración y sin describir los hechos que fueron rechazados y las razones para ello.

Por su parte, Empresas Ferrer alega que la determinación de A.R.P.E. merece deferencia y respeto por parte de este Tribunal, ya que misma está sostenida por evidencia sustancial que obra en el expediente administrativo. Sostiene que la Asociación de Condóminos y el licenciado Antonetti Zequeira no han presentado evidencia que derrote la presunción de legalidad y corrección que cobija a la determinación de A.R.P.E. en controversia.

Empresas Ferrer opcionó la compra de dos solares colindantes por sus patios posteriores, localizados entre la Calles Wilson y Luchetti del Condado. En estos terrenos, una vez agrupados, propone la construcción de un complejo de vivienda multifamiliar. Dado que el proyecto propuesto excede varios parámetros de construcción establecidos por el Reglamento del Condado, Empresas Ferrer solicitó variaciones a los mismos. Específicamente, Empresas Ferrer solicitó variaciones en densidad, la altura exterior del edificio, sus patios laterales exteriores e interiores y en el área bruta del piso. Esta solicitud se presentó conforme la sección 6.04 del Reglamento del Condado, que establece los criterios **que tienen que satisfacerse antes** que A.R.P.E. o la Junta de Planificación concedan variaciones a los requisitos reglamentarios. 23 R.P.R. sec. 650.1854; *Mun. de San Juan v. J.C.A*, *supra*, 695, nota 2.

Luego de celebrar vistas públicas y de escuchar a los proponentes y opositores del proyecto, A.R.P.E. aprobó el anteproyecto presentado por Empresas Ferrer y las variaciones a los parámetros de construcción del Reglamento del Condado solicitadas por la compañía. En su resolución, la agencia se limitó a consignar como determinaciones de hecho, la descripción del proyecto a desarrollarse, las variaciones solicitadas, la dirección física y el número de pisos de los edificios colindantes, los endosos con los que contaba el proyecto, la fecha de celebración de la vista pública ante el oficial examinador y que éste recomendó favorablemente la

aprobación del anteproyecto y la concesión de las variaciones solicitadas.

Del expediente del presente recurso se desprende que los opositores a la concesión de las variaciones solicitadas presentaron un informe preparado por su perito donde se argumentó que las características del proyecto de Empresas Ferrer no se ajustaban a la reglamentación vigente y que A.R.P.E. estaba violentando la política pública vigente en materia de planificación urbana.[15] De hecho, Empresas Ferrer contestó estos señalamientos en un segundo informe presentado ante A.R.P.E.[16] No obstante lo anterior, de ninguna forma en la resolución de A.R.P.E. se refleja que se consideró y resolvió los conflictos de prueba que evidentemente tuvo ante su consideración la agencia, ni mucho menos se describen los hechos que durante el procedimiento administrativo fueron probados o rechazados. *Mun. de San Juan v. J.C.A.*, *supra*, 280. Esta situación sin lugar a dudas obvia la norma de que "la expresión de los fundamentos de una decisión no puede ser pro forma" y que ésta "debe reflejar que la agencia ha cumplido su obligación de evaluar y resolver los conflictos de prueba del caso ante su consideración." *Id*.

La resolución emitida por A.R.P.E. no hace tampoco referencia a disposiciones específicas de la sección 6.04 del Reglamento del Condado que establece los criterios **que se tienen que satisfacer antes que A.R.P.E. conceda una**

---

[15] Análisis del Anteproyecto Núm. 01AA2-CET00-05524, Apéndice al recurso de *certiorari*, pág. 231.
[16] Apéndice al recurso de *certiorari*, pág. 206.

**variación**. 23 R.P.R. sec. 650.1854. De hecho, una lectura de las escuetas conclusiones de derecho de la resolución recurrida demuestra que A.R.P.E. justificó la concesión de las variaciones solicitadas por Empresas Ferrer simplemente en **la forma irregular del solar**, la entrada y salida de vehículos desde el edificio proyectado, incluyendo la salida de taxis y las características y valor de los edificios aledaños. En esencia, estas escuetas conclusiones de derecho evidencian que la agencia no consideró la solicitud de variaciones presentada por Empresas Ferrer como correspondía, según el Reglamento del Condado.

Ante lo que aparentaba ser el fundamento principal utilizado por Empresas Ferrer para justificar la solicitud de variaciones que presentó ante A.R.P.E., entiéndase la forma irregular del solar creada por la futura agrupación de los dos predios de terreno que opcionó la compañía,[17] A.R.P.E. debió considerar en primer lugar los méritos de esta justificación. La agencia no podía obviar que en nuestra jurisdicción no procede "la solicitud y concesión de una variación en casos en que el promovente -conociendo las limitaciones impuestas por los requisitos de zonificación- se

---

[17] Ya habíamos señalado que en el Memorial Explicativo que presentó Empresas Ferrer como parte de su solicitud de anteproyecto, la compañía solicitó las variaciones argumentando que las mismas "están directamente relacionadas con la **configuración inadecuada** de la propiedad." Apéndice al recurso de *certiorari*, pág. 66. (Énfasis suplido) Además habíamos indicado que en el Memorando de Derecho que presentó ante A.R.P.E. durante la consideración de su anteproyecto expresó que las variaciones solicitadas **responden a la forma irregular del solar.**" Memorando de Derecho de Empresas Ferrer, *Id.*, pág. 202. (Énfasis suplido).

coloca voluntariamente en una posición que le ocasiona perjuicio irrazonable." *Asoc. Res. Baldrich, Inc. v. J.P. de P.R.*, *supra*; *Véase además Asoc. Vec. Urb. Huyke v. Bco. Santander*, *supra*; *Fuertes y Otros v. A.R.P.E.*, *supra*; *A.R.P.E. v. J.A.C.L.*, *supra*. Como indicáramos, una modalidad de lo anterior resulta ser cuando el promovente de una variación deliberadamente configura las dimensiones o forma de un predio de terreno de forma tal que esta situación sirva para justificar la concesión de las variaciones que solicita para la propiedad tal y como ocurrió en este caso. *Williams and Taylor*, *supra*; *véase además Appeal of Lally*, *supra*; *Corsino v. Grover*, *supra*; *In the matter of Germaine M. Thomas, et al. v. Board of Standards and Appeals of the City of New York, et al.*, *supra*. De hecho, el Reglamento del Condado adopta estos principios al disponer que podrán concederse variaciones a sus requisitos si existen datos suficientes para establecer "[q]ue debido a circunstancias excepcionales o extraordinarias la aplicación literal [del Reglamento] resultaría en una dificultad práctica o en un perjuicio innecesario **no creado o atribuible al dueño de la propiedad**," 23 R.P.R. sec. 650.1854(B) (énfasis suplido).

A.R.P.E. tenía conocimiento de que la forma irregular del solar donde se desarrollaría el proyecto fue deliberadamente creada por Empresas Ferrer. Dicha irregularidad del solar sirvió como justificación para la solicitud de variaciones, pues la aplicación literal de las disposiciones reglamentarias dificultaría el desarrollo de la

propiedad. *Memorial Explicativo*, Apéndice al recurso de *certiorari*, pág. 67.     Ante esta situación, A.R.P.E. no podía considerar el perjuicio que causaba la irregularidad del solar al desarrollador como fundamento para conceder la variación, ya que esta condición del solar fue deliberadamente creada por Empresas Ferrer para justificar su solicitud de variaciones y a su vez acomodar en el predio del terreno en controversia el proyecto de construcción que pretende desarrollar.  La agencia debía considerar únicamente los demás criterios que dispone el Reglamento del Condado para la concesión de variaciones.

No obstante lo anterior, la agencia no procedió de tal forma.   Como ya advertimos, la resolución emitida por A.R.P.E. no hace referencia a las disposiciones específicas de la sección 6.04 del Reglamento del Condado, *supra*, que establece los criterios que se tienen que satisfacer antes que la agencia conceda una variación.  Por el contrario, justificó la concesión de las variaciones solicitadas por Empresas Ferrer simplemente en **la forma irregular del solar** -- factor que no podía considerar --, la entrada y salida de vehículos desde el edificio proyectado, incluyendo la salida de taxis, y las características y valor de los edificios aledaños.   En fin, A.R.P.E. no evaluó la solicitud de variaciones presentada por Empresas Ferrer según lo exige el Reglamento de Zonificación Especial del Condado, *supra.*

Definitivamente, estamos ante una determinación administrativa deficiente que no nos permite otorgarle la

deferencia que generalmente le concedemos a este tipo de determinaciones administrativas. Las determinaciones de hecho y conclusiones de derecho consignadas en la Resolución de A.R.P.E., al igual que el expediente administrativo, no permiten la conclusión en el sentido de que las variaciones concedidas cumplen con los criterios para la concesión de las mismas que establece la sección 6.04 del Reglamento del Condado. Lo anterior sin lugar a dudas es contrario a la norma establecida por este Tribunal de que "una decisión administrativa concediendo o denegando excepciones o variaciones acorde a los Reglamentos de Zonificación debe estar fundamentada," demostrando así la agencia que analizó los criterios estatutarios y reglamentarios aplicables a la consideración de este tipo de solicitud. *Vélez Rodríguez v. A.R.P.E.*, supra; *López v. Junta de Planificación*, supra.

Permitir actuaciones como las del presente caso, sería dejar la puerta abierta para que desarrolladores utilicen como subterfugio la forma irregular de un solar deliberadamente creada, para fundamentar una solicitud de variaciones y la eventual construcción de estructuras con dimensiones no toleradas por la reglamentación vigente.

**IV.**

Por los fundamentos anteriormente discutidos, se revoca la determinación del Tribunal de Apelaciones que confirmó la Resolución emitida por A.R.P.E. mediante la cual autorizó el anteproyecto y las variaciones en controversia.

Se dictará sentencia de conformidad.


Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Empresas Ferrer Inc.,
por conducto del
Arq. Enrique Gutiérrez
        Recurrida

                v.

Administración de Reglamentos
y Permisos (A.R.P.E.)                    CC-2005-156
        Recurrida

                v.

Asociación de Condóminos del
Condominio Grand Royal, *et al*.
Interventores-Peticionarios



SENTENCIA


San Juan, Puerto Rico, a 2 de octubre de 2007

Por los fundamentos anteriormente discutidos, los cuales se incorporan en su totalidad a esta sentencia, se revoca la determinación del Tribunal de Apelaciones que confirmó la Resolución emitida por A.R.P.E.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Rivera Pérez disiente sin opinión escrita. El Juez Presidente señor Hernández Denton inhibido. El Juez Asociado señor Fuster Berlingeri no intervino.


                Dimarie Alicea Lozada
        Secretaria del Tribunal Supremo Interina